## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 09-B-72550 |
|---|---|---|---|
| DATE | July 9, 2010 | ADVERSARY NO. | |
| CASE TITLE | In re Thurman Dotson, Sr., Debtor | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Debtor's motion to change venue and motion for leave to amend his bankruptcy schedule are DENIED.

■ [ For further details see text below.]

This matter came before the Court initially as a motion of the Debtor to transfer venue to the Western District of Wisconsin. The Court held an evidentiary hearing on the motion on June 25, 2010, and at the beginning of the hearing it became clear that the true issue was not one of venue, but rather one of exemptions. The Debtor owns real estate in both Rockford, Illinois, and New Lisbon, Wisconsin. In his bankruptcy petition, he claimed Illinois exemptions, including a homestead exemption on his Rockford property, but the Debtor's

counsel indicated that the Debtor now wants to claim Wisconsin exemptions to protect his New Lisbon property, which the Trustee was taking steps to sell. The Court noted that the standards for determining proper venue are not the same as the standards for determining the applicable state law for purposes of exemptions. Therefore, the mere fact that the bankruptcy case was filed in Illinois would not in itself preclude the Debtor from claiming Wisconsin exemptions, and transferring venue would not cure the Debtor's problem, since his schedules currently listed Illinois exemptions. The Debtor therefore made an oral motion for leave to file amended schedules to list Wisconsin exemptions, and the Trustee made an oral objection to the motion to amend, as well as an objection to any claim of Wisconsin exemption. The parties acknowledged that, because the issues overlapped with the issue of venue, and because all necessary witnesses were in the courtroom, they would rather hear the oral motion and objections on that day than have to recall the same witnesses on a later date.

**Findings of Fact**

The Debtor, Thurman Dotson, Sr., is 71 years old, raised eight children, and worked in the drainage and sewer business for over 55 years. All of his children are grown. Two sons and two daughters live in Illinois. Two daughters live in Ohio. One son lives in Arizona, and one son lives in Wisconsin.

By 2004, Mr. Dotson was retired, but in that year he bought a sewer-related business in Elgin, Illinois, for his daughter, Karen, and her son. His original intent was for the daughter and her son to run the business, and Mr. Dotson would only help out as needed. However, they needed substantially more help than he had anticipated and he frequently had to assist them. The business did especially poorly in 2007 and 2008, and by that point the business had mounting debts as well as a large tax deficiency. These financial difficulties affected not only the business, but Mr. Dotson individually, and ultimately resulted in Mr. Dotson filing a personal bankruptcy petition for protection under Chapter 7 with this Court on June 19, 2009.

Mr. Dotson had lived in Kentucky until sometime around 2005, and lived in Belvidere, Illinois, for about a year after that until 2006. However, he tells inconsistent stories about where he lived from 2006 until the present, and the primary issue in this proceeding has been whether he lived primarily in Illinois or in Wisconsin during that time.

He purchased some vacant land in New Lisbon, Wisconsin, in 2001, which he bought thinking that he might someday use it for retirement. In 2003, he put a double-wide trailer on the land, and in 2005, he put up a pole building on the land. His oldest son was the first person to occupy the New Lisbon property, and that son still occupies the land today. However, in 2006, apparently at the same time that he moved out of Belvidere, Mr. Dotson also bought a house in Rockford, Illinois.

Mr. Dotson listed the Rockford house as his address and residence in his 2005, 2006, 2007, and 2008 federal tax returns. He listed the Rockford house as his address in at least his 2008 Illinois state income tax return, which he filed as an Illinois resident. He listed the Rockford house as his address and residence in his bankruptcy petition and schedules. Schedule C listed the Rockford property as his "Residence," stated that it had been purchased in September 2006, and claimed a $15,000 exemption in the property under the Illinois homestead exemption, 735 ILCS 5 §12-901. At the Section 341 meeting of creditors, held on July 22, 2009, Mr. Dotson acknowledged that the Rockford property was his residence, and that he had "been there a little over two years." (341 Tr. 1, July 22, 2009). The Debtor's bankruptcy schedules listed the New Lisbon property as a "Rental Home" and stated that Mr. Dotson received $790 per month in rent. At the 341 meeting, he stated that his son lived in the New Lisbon property and that his son paid him $800 per month in rent. (341 Tr..3, 7). He stated that the son "lives there by [himself], my son does," except that he currently had a friend staying with him on vacation. (341 Tr. 13-14). Mr. Dotson said that, "I go up there every once in awhile." (341 Tr. 14).

In contrast, at the evidentiary hearing on June 25, 2010, Mr. Dotson claimed that he "started living [in the New Lisbon property] in 2006 ... and I've lived there ever since." (Trial Tr. 21-22, June 25, 2010). He

claimed that he bought the Rockford property because he had to come down to Elgin once or twice per week to help with the business and wanted to have somewhere closer to stay. (Trial Tr. 24).[1] He claimed that he would normally stay in Rockford "two days out of the week and sometimes I would stay an extra two days." (Trial Tr. 24). He claimed he stays "in Wisconsin most of the time." (Trial Tr. 72). He claimed that, after he purchased the Rockford house in 2006, "nobody moved in right away and there ain't been nobody living there." (Trial Tr. 72). He claimed that his grandson "stays there more than I could ever stay there." (Trial Tr. 72). While Mr. Dotson admitted that he received mail at the Rockford address, he claimed that he received "the vast majority" of his personal mail at the New Lisbon address. (Trial Tr. 73). He claimed that his grandson picked up the mail at the Rockford address when he was not there. (Trial Tr. 72). Despite his prior statements at the 341 meeting and on his bankruptcy filings, Mr. Dotson claimed, "I didn't say I rented [the New Lisbon property] I don't think. I've never rented that out to nobody." (Trial Tr. 47). Mr. Dotson now claims that, while at one time his son offered to 'help him out' with the mortgage payment if he was in financial difficulty, he "never took a dollar." (Trial Tr. 47, 71).

Mr. Dotson was unable to explain the inconsistencies between his testimony at the June 25, 2010, hearing and his prior statements. He claimed that he never read or reviewed the bankruptcy petition or schedules before they were filed. His prior attorney, Linda Godfrey of the Michael Crosby Law Firm, was licensed to practice in both Illinois and Wisconsin, and Mr. Dotson claimed that he thought his attorney would file the bankruptcy petition in Wisconsin, not Illinois. Similarly, he claimed that his accountant prepared his tax returns, and that he did not review them before they were submitted. However, he was unable to give any explanation for his testimony from the 341 meeting, other than to state that he did not remember what he said or could not understand why he would have said what was alleged.

---

[1] The Court queries why, if this was the sole reason for purchasing the Rockford property, Mr. Dotson did not purchase a house in Elgin rather than a house in a city 50 miles away.

Mr. Dotson was unable to produce almost any documentation to support his assertion that the New Lisbon property was his primary residence or that Wisconsin was his domicile during the three years preceding the bankruptcy petition. He does have a Wisconsin driver's license, listing the New Lisbon address, which was issued on March 2, 2007. He stated that his prior driver's license was an Illinois license, listing his prior address in Belvidere, and claimed that he got a Wisconsin driver's license shortly after being stopped by a police officer in Wisconsin. He also submitted a single letter from the Crosby Law Firm, dated March 31, 2009, addressed to him at his New Lisbon address. However, an additional six letters from the Crosby Law Firm, between June 2009 and May 2010, were also submitted by the Debtor which were addressed to him at his Rockford address. The other evidence that the Debtor submitted to substantiate his argument was all dated post-petition. He submitted a copy of a bank print screen for a loan from the Mauston Bank, listing his New Lisbon address. But, the printout is dated January 21, 2010, and it is not unusual that the reference address would be the New Lisbon address, since the loan from the Mauston Bank was a mortgage loan secured by the New Lisbon property. He submitted a copy of a Social Security Benefit Statement addressed to him at his New Lisbon address, but it is an annual statement for 2009, and therefore must have been sent some time in 2010. He submitted amended federal and Illinois tax returns for 2008, listing his New Lisbon address and claiming Wisconsin residency, but these were filed in January 2010.

The Court does not doubt that Mr. Dotson spent time in both the Rockford and the New Lisbon homes. Nor does the Court doubt that Mr. Dotson in his mind thought that he might eventually settle down with his son in the New Lisbon home. But, from the evidence provided, the Court believes that Mr. Lisbon spent the majority of his time in 2006 through 2009 at the Rockford address, and treated it as his primary residence. The Court believes that Mr. Dotson's son lived at the New Lisbon address, and that Mr. Dotson visited him only occasionally, or at least spent only a minority of his time in Wisconsin.

**Conclusions of Law**

**A. Venue**

Under 28 U.S.C. § 1408, a case under title 11 may be commenced in the district

> in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district.

28 U.S.C.A § 1408(1) (West 2010). The Debtor now claims that his residence and domicile are in New Lisbon, Wisconsin, and have been since at least 2006. However, even if true, and even if venue were not proper in the Northern District of Illinois under 28 U.S.C. §1408, the Debtor has waived any objection of improper venue. Unlike lack of jurisdiction, improper venue is a waivable defect. See, e.g., In re Mandalay Shores Cooperative Hous. Assoc., Inc., 63 B.R. 842, 854 n.18 (N.D. Ill. 1986) (Shadur, J.). The Debtor chose to file his bankruptcy petition with this Court on June 19, 2009, and in his petition he listed his address as Rockford, Illinois. Furthermore, in his bankruptcy petition, he stated that he "has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District."

The Debtor claims that his attorney inappropriately filed his case in Illinois rather than Wisconsin without his knowledge or consent. But, even if assuming *arguendo* that the Debtor had not waived his right to object, "the party challenging venue bears the burden of establishing by a preponderance of the evidence that the case was incorrectly venued." In re Peachtree Lane Assocs., Ltd., 150 F.3d 788, 792 (7th Cir. 1998). The Debtor has not met this burden. Not only does the Court believe that the Debtor's domicile and residence were in Illinois for the three years preceding the petition date, as discussed below, but it is undisputed that the Debtor's principal place of business was in Northern Illinois. 28 U.S.C. § 1408(1) provides four alternative bases for venue: domicile, residence, principal place of business, and the location of the debtor's principal assets

in the United States, and "any of the four is jurisdictionally sufficient." In re Segno Commc'ns, Inc., 264 B.R. 501, 505 (Bankr. N.D. Ill. 2001) (Schmetterer, J.). "By providing four alternative bases for proper venue, the statute allows many possible locations where an entity or individual may file for bankruptcy protection." Id. The Debtor's only business between 2004 and his bankruptcy petition was the company he owned, Dotson Brothers Sewer, Inc., which was undisputedly located in and operated in Elgin, Illinois. See, e.g., In re Canavos, 108 B.R. 55 (Bankr. E.D. Pa. 1989) (finding that, although individual debtor's residence and domicile was New Jersey, venue was proper in Pennsylvania where the situs of debtor's principal and only business venture as an entrepreneur was located in Pennsylvania, even where that business was dormant). Therefore, the Court finds that venue in this district was not improper.

Regardless of whether or not venue was proper in the first instance, under 28 U.S.C. §1412, a court may transfer a case to another district "in the interest of justice or for the convenience of the parties." However, under Fed. R. Bankr. P. 1014(a), a court may only transfer the case "(1) on the timely motion of a party in interest or on its own motion" and (2) "if the court determines that transfer is in the interest of justice or for the convenience of the parties." The motion was filed eleven months after the petition date, long after a 341 meeting was held, and therefore was clearly untimely. The Debtor has identified no recent change in circumstances warranting transfer or any other excuse for his delay in filing the motion. The Debtor claims that he did not realize that the case had been filed in Illinois, but this is difficult to believe, considering that he attended a 341 meeting in Rockford, and must have received numerous notices of motions and orders during the pendency of the case. Even if the Court were to accept his argument that he did not know where the case was filed at first, Mr. Dotson testified that he understood the ramifications of his case having been filed in Illinois in December 2009, when he received notice of the Trustee's motion for approval to hire a realtor. However, even then Mr. Dotson waited an additional 6 months to file the current motion in June 2010. The motion was not timely.

Nor has the Debtor given any argument that transfer would be in the interest of justice or the convenience of the parties. Factors used in determining whether a court should exercise its discretion to transfer venue include "(1) proximity of creditors to the court; (2) proximity of the debtor to the court; (3) the location of witnesses necessary to the administration of the estate; (4) the location of debtor's assets; (5) the ability to conduct an economical and efficient administration of the estate in the forum; and (6) the existence of any 'intertwined relationships' between the instant debtor and his affiliates or other debtors before the court." In re Eleven Oak Tower Ltd., 59 B.R. 626, 628-29 (Bankr. N.D. Ill. 1986) (citing In re Bankers Trust, 403 F.2d 16, 23 (7th Cir.1968)). The only factor that the Debtor alleges is that he lives in Wisconsin. But, both the Debtor's prior and current counsel have offices in or around Rockford, and the fact that the case has been proceeding for almost a year in Rockford without complaint indicates that the Debtor cannot suffer much inconvenience. Instead, the motion was brought in response to actions taken by the Trustee to sell the Wisconsin property. Transferring venue would disrupt those efforts to sell the property, require a new trustee, and result in wasteful duplication of efforts. The Debtor initially chose this venue, and has not alleged any change in circumstances or any other reason warranting changing venue to Wisconsin. The motion to transfer venue will be denied.

**B. Motion For Leave to Amend Schedules**

A Debtor may amend a bankruptcy schedule "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). However, the Seventh Circuit Court of Appeals has recognized that "[e]xceptional circumstances may prevent a debtor from amending schedules." In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993). Thus, while the Seventh Circuit "endorses the 'permissive approach' of allowing amendment of schedules ... an amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors." Id. Here, the Court does not believe that the Debtor has acted in bad faith, but if the Debtor is not entitled to claim Wisconsin exemptions, it would prejudice creditors to allow the Debtor to amend his schedules to claim an exemption for which he is not entitled. The Debtor filed the current

motion in response to actions taken by the Trustee to sell the Wisconsin property. The Trustee has hired a realtor to market the property for the past five months, and has located a potential buyer for a closing in July. If the Court were to allow the Debtor to file amended schedules claiming the Wisconsin exemption, wait for the Debtor to actually file such amended schedules, and then wait for the Trustee to file an objection and set a hearing for the exemption, the Trustee would likely lose the potential buyer, causing prejudice to creditors. If the Debtor had no right to the exemption, the potential loss to the creditors would come with no benefit to the Debtor. Moreover, at the June 25, 2010 trial, both the Debtor and the Trustee acknowledged that the issue of the Debtor's domicile was a key factor for both the motion to change venue and for an objection to any claim of Wisconsin exemption. The parties acknowledged that they had all necessary witnesses that day and that it would be in the interest of all parties for the Court to hear evidence on the oral motions and objections rather than hold a subsequent hearing. Therefore, the Debtor has waived any procedural right he might have to actually amend the schedules and have a separate hearing before the Court rules on the substantive objection to the exemptions. The Court in Yonikus noted that Rule 4003(b) "clearly permits, but does not require, a hearing" on objections to claimed exemptions and that where "[n]o hearing on further evidentiary matters was sought ... none was necessary." Id. at 873-74. Whether viewed as an objection to a motion for leave to amend schedules or as a direct objection to a claimed exemption, the burden is on the Trustee as the objecting party. Yonikus, 966 F.2d at 872 (burden of proof on objecting party for objection to motion for leave to amend schedules); Fed. R. Bankr. P.4003(c) ("the objecting party has the burden of proving that the exemptions are not properly claimed"). However, as noted below, the Trustee has met this burden.

### C. Applicable State Exemptions under Section 522(b) and "Domicile"

Under 11 U.S.C. §522(b), a debtor may exempt from property of the estate certain property in order to protect the Debtor's 'fresh start.' Section 522(b)(1) "affords the states the authority to restrict their respective residents to exemptions promulgated by the state legislatures, if they so choose [and this] statutory provision is

an express delegation to the states of the power to create state exemptions in lieu of the federal bankruptcy exemption scheme." Sheehan v. Peveich, 574 F.3d 248, 252 (4th Cir. 2009). In this way, Congress has granted "the states broad power to craft state exemption laws applicable to bankruptcy proceedings." Id. (internal citation omitted). Under Section 522(b)(3), the relevant state law for purposes of exemptions is based on the debtor's "domicile" pre-petition. Property may be exempted for bankruptcy purposes if it would be exempt under the state law applicable on the date of filing "at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition," or, "if the debtor's domicile has not been located at a single State for such 730-day period" the applicable State law of "the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place."[2]

For purposes of Section 522(b), a debtor is "domiciled" in a state if (1) the debtor was physically present in the state for the greater part of the 730-day period preceding the petition date, and (2) the debtor intended to remain in the state indefinitely. Lowenschuss v. Selnick (In re Lowenschuss), 171 F.3d 673, 684 (9th Cir. 1999) (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989)). A person can only have one domicile at a particular time, even though he may have several residences. Farm Credit Bank of Wichita v. Hodgson (In re Hodgson), 167 B.R. 945, 950 (D. Kan. 1994) (citing Williamson v. Osenton, 232 U.S. 619 (1914)). Although "a party's subjective statements of intent are to be considered, intent is primarily examined through 'the circumstantial evidence of a person's manifested conduct.'" LRJ, Inc. v. Edwards, No 95-C-50083, 1996 WL 417501, at *2 (N.D. Ill. July 11, 1996) (Reinhard, J.) (quoting Sadat v. Mertes, 615 F.2d 1176, 1181 (7th Cir. 1980)). A court must evaluate all of the circumstances of the case to determine the domicile of a party, and no single factor is conclusive. In re Hodgson, 167 B.R. at 950. Among the factors to be considered are: "(1) current residence; (2) voting registration and voting practices; (3) location of spouse and family; (4)

---

[2] Under Section 522(b)(2), the state law applicable under Section 522(b)(3)(A) also controls whether a debtor may select the federal exemptions under Section 522(d).

location of personal or real property; (5) location of brokerage and bank accounts; (6) memberships in churches, clubs, unions and other organizations; (7) location of a person's physician, lawyer, accountant, dentist and stockbroker; (8) place of employment or business; (9) driver's license and automobile registration; and (10) payment of taxes." Id. at 950-51 (citing District of Columbia v. Murphy, 314 U.S. 441, 455-58 (1941)).

Here the Trustee presented evidence demonstrating overwhelmingly that Mr. Dotson's domicile during the three years preceding the petition date was Illinois, not Wisconsin. In Mr. Dotson's bankruptcy petition and schedules, which were signed and submitted under penalty of perjury, he lists his Rockford, Illinois, address as his residence, and the Wisconsin property as "Rental Property." In Mr. Dotson's Statement of Financial Affairs, he lists his Rockford, Illinois, address and states that he has not "moved within **three years** immediately preceding the commencement of this case" and occupied but vacated any premises within that period. In the Debtor's bankruptcy schedules, he claimed Illinois exemptions, which he would only be entitled to claim if Illinois was his domicile within the relevant periods set forth in Section 522(b). Mr. Dotson listed Rockford, Illinois, as his home address in his 2005, 2006, 2007, and 2008 federal tax returns. He also listed this address in at least his 2008 Illinois tax return, in which he listed himself as a resident of Illinois.[3] During the three years prepetition, his only business income was from the sewer-related company located in Elgin, Illinois. Although his oldest son lives in Wisconsin, two of his other sons, and two of his daughters, including the one for whom he bought the sewer company which he helped run, live in Illinois. All of this weighs heavily in favor of determining that his domicile was Illinois.

Mr. Dotson claims that he did not read his tax returns or bankruptcy schedules, and that he was not aware that his accountant and attorney had listed his address as Rockford, Illinois. However, his testimony under oath at the Section 341 meeting of creditors in his own words demonstrates that his domicile was Illinois. When asked his address, he stated the Rockford, Illinois, address, and said that he had been there for over two years. When asked about the New Lisbon, Wisconsin, property, he said his son lived there and that he rented it

---

[3] Neither party submitted copies of his state tax returns for other tax years ending prepetition.

to him for $800 per month. In further describing the Wisconsin property, he said that "he lives there by [himself], my son does," and that "I go up there every once in a while."[4]

Mr. Dotson has given testimony and presented evidence to argue that his true domicile was Wisconsin, but only after the petition date and only after the Trustee began taking steps to sell the Wisconsin property. Therefore, while Mr. Dotson filed amended tax returns to amend his address and residence to Wisconsin, he only did this in early 2010. The Debtor submitted a statement of Social Security benefits which was addressed to his Wisconsin address, but it was a cumulative 2009 statement, and thus must have been sent some time in 2010, well after the petition date. At the June 25, 2010, hearing, he testified that he spent well over half his time at the Wisconsin property during the three years before his bankruptcy, and only occasionally stayed at the Rockford property while helping with the business. But, the testimony was in direct contravention of his earlier testimony at the 341 meeting, and he was unable to explain the inconsistency. Now that Mr. Dotson has realized the importance of being able to claim a Wisconsin domicile in order to claim the Wisconsin homestead exemption, he has an economic interest in demonstrating Wisconsin residency. With this potential bias towards exaggerating the time he spent in Wisconsin, the Court gives less weight to statements or corrections made post-petition.

The Debtor has only submitted two pieces of prepetition evidence indicating a Wisconsin domicile. First, he submitted one letter sent by his prior attorney to him at his Wisconsin address, dated March 31, 2009. But, he also submitted six letters from the same attorney addressed to him at his Rockford, Illinois, address between 2009 and 2010. An obvious explanation is that he had given the attorney both addresses because he had to list all of his assets, and the attorney had made a mistake. This explanation accords with the fact that, after the first letter was sent to the Wisconsin address, all of the other letters were sent to the Rockford address.

---

[4] The Debtor notes that at one point in the 341 meeting, Mr. Dotson stated that his son "lives with me." However, the Trustee immediately clarified that Mr. Dotson's address was in Illinois but that the son was "renting the house in New Lisbon." (341 Tr. 17). The implication was that by saying his son "lives with me" Mr. Dotson meant that the son 'lives in a house owned by me,' rather than that the son and Mr. Dotson lived together in Wisconsin.

Case 09-72550    Doc 57    Filed 07/09/10    Entered 07/12/10 15:03:34    Desc Main
                             Document      Page 13 of 14

Presumably, either he corrected the attorney and asked her to send future correspondence to the Rockford address or the attorney realized the mistake on her own. Second, Mr. Dotson was issued a Wisconsin driver's license on March 2, 2007. However, while a driver's license is one factor in determining domicile, it is simply not enough to outweigh the tax filings, bankruptcy petition and schedules, and prior admissions under oath that indicate that his domicile was Illinois during the three years preceding the petition date. Rockford is less than 20 miles south of the Wisconsin border, and from the Court's experience, it is not unusual to see debtors who own real estate in both Illinois and Wisconsin. The Debtor's prior counsel, Linda Godfrey, who practices in both Illinois and Wisconsin, testified that that it was not unusual to see clients whose residence was in Illinois but who had a Wisconsin driver's license.

The Court does not doubt that Mr. Dotson spent time in both Wisconsin and Illinois, but based on the evidence presented, believes he spent more time in Rockford and treated it more as his home. His oldest son was living in the Wisconsin property, and Mr. Dotson might have intended at some time in the future to move in with him permanently. But, the Court does not believe he had made the move, yet. Instead, the Court believes that Mr. Dotson was still taking an active role in the Elgin business, and found it easier to live in Rockford and merely visit his son in Wisconsin from time to time. Perhaps it would have been more advantageous in the long run if Mr. Dotson had resided predominantly in the Wisconsin property for 2006 through 2009, and the Court can understand his desire to keep the Wisconsin property for his son and his own retirement. But, Mr. Dotson cannot go back in time, and the Court feels that it is now just wishful thinking. Each state determines which exemptions it will grant its residents, and Congress has decided in Section 522(b) that, with limited exceptions, a debtor is eligible for only one state's exemptions.[5] Moreover, in the 2005 amendments to the Bankruptcy Code, Congress made it even harder for debtors to choose a state by extending the required domicile period from 180 days to 730 days. The Court is sympathetic to Mr. Dotson's desire to keep his Wisconsin property,

---

[5] Or if permitted by that state, the Federal exemptions.

but he is only eligible for the exemptions that the Bankruptcy Code provides. Under these circumstances, the exemptions provided by the Bankruptcy Code are those provided under Illinois, not Wisconsin law.

### Conclusion

Because Mr. Dotson is only eligible to claim Illinois exemptions under Section 522(b), and not Wisconsin exemptions, and because Mr. Dotson asks for leave to amend his schedules only to claim Wisconsin exemptions, the Court will deny his motion.

For the foregoing reasons, the Debtor's motion to change venue and motion for leave to amend his bankruptcy schedule are DENIED.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

July 9, 2010

Judge Manuel Barbosa